UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAGNET COMMUNICATIONS, LLC )
A New York limited liability company, )
                    Plaintiff, )
  v. )  Case No. 04 C 4630
)
HEALTHCARE BRANDING GROUP, )  Judge Amy J. St. Eve
INC., an Illinois corporation, )
                    Defendant. )
- - - - - - - - - - - - - - - - - - - - - - - - - - -
HEALTHCARE BRANDING GROUP, )
INC., an Illinois corporation, )
    Defendant/Counter-Plaintiff, )
)
  v. )
)
MAGNET COMMUNICATIONS, LLC )
A New York limited liability company, )
n/k/a EURO RSCG MAGNET, LLC, )
)
    Plaintiff/Counter-Defendant. )

## NOTICE OF FILING

To:   Bennett L. Epstein
       James D. Dasso
       Christopher J. Werner
       Foley & Lardner LLP
       321 N. Clark, Suite 2800
       Chicago, IL 60610-4764

PLEASE TAKE NOTICE that on September 7, 2004, the undersigned filed with the Clerk of the District Court, Chicago, Illinois, Defendant's Counterclaim and Affirmative Defenses, a copy of which is attached hereto and served upon you.

Elliot S. Wiczer
WICZER & ZELMAR, LLC
500 Skokie Boulevard, Suite 350
Northbrook, IL 60062
(847) 849-4800
Attorney ID Number: 06208432

## CERTIFICATE OF SERVICE

I, Elliot S. Wiczer, on oath state that I caused a copy of the foregoing Counterclaim and Affirmative Defenses to be served upon the person(s) named above by depositing the same in the United States Mail at 500 Skokie Boulevard, Northbrook, Illinois, at the hour of 5:30 p.m. on this ___ day of September, 2004.

_____

Elliot S. Wiczer
WICZER & ZELMAR, LLC
500 Skokie Boulevard, Suite 350
Northbrook, IL 60062
(847) 849-4800
Attorney ID Number: 06208432

2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAGNET COMMUNICATIONS, LLC )
A New York limited liability company, )
)
           Plaintiff, )
v. )  Case No. 04 C 4630
)
HEALTHCARE BRANDING GROUP, )  Judge Amy J. St. Eve
INC., an Illinois corporation, )
)
           Defendant. )
- - - - - - - - - - - - - - - - - - - - - - - - - - -
HEALTHCARE BRANDING GROUP, )
INC., an Illinois corporation, )
    Defendant/Counter-Plaintiff, )
)
v. )
)
MAGNET COMMUNICATIONS, LLC )
A New York limited liability company, )
n/k/a EURO RSCG MAGNET, LLC, )
)
    Plaintiff/Counter-Defendant. )

## COUNTERCLAIM

NOW COMES the Defendant/Counter-Plaintiff, HEALTHCARE BRANDING GROUP, INC., an Illinois corporation ("HBG"), by and through its attorneys, and complaining of the Plaintiff/Counter-Defendant, MAGNET COMMUNICATIONS, LLC, n/k/a EURO RSCG MAGNET, LLC, states as follows:

### PARTIES

1.    HBG is an Illinois corporation with its principal place of business in Chicago, Illinois.

2. Prior to December 31, 2002, HBG operated its business independent of any other business or entity.

3. HBG is a national company providing "brand development and full service communications services to companies in the healthcare sector. The principals of HBG have over 20 years experience in health care communications.

4. HBG and its principals have a far reaching network in the healthcare sector. Some of their representative clients have been Blue Cross Blue Shield of Illinois, Abbott, Baxter Healthcare International, Hospital Sisters Health Systems and Premier and other similar healthcare organizations.

5. Magnet Communications, LLC, ("Magnet") is in the business of public relations and media relations.

6. Magnet was not specializing in health care branding, marketing and/or communications before the partnership with HBG. With HBG's experience the vision of the two companies was that HBG could enable Magnet's Chicago office to expand into the healthcare industry performing a full service continuum of communication services.

## JURISDICTION AND VENUE

7. Magnet, upon information and belief, maintains its principal place of business in New York, New York. Magnet is doing business in Chicago, Cook County, Illinois, with offices located at 36 East Grand.

8. Venue is proper in this district under 28 U.S.C. Sections 1391(b) and (c) in that all of the facts and occurrences giving rise to this cause of action arose in the Northern District of Illinois.

9. This Court has jurisdiction of this Counterclaim based both on 28 U.S. C. Section 1332, "Diversity", in that this is a civil action between citizens of different states and the controversy exceeds $75,000.00. Also, this Court also has jurisdiction based on 28 U.S.C. Section 1367, "Supplemental Jurisdiction".

## FACTS COMMON TO ALL COUNTS

10. Some time prior to December, 2002, HBG and Magnet began discussing potential business strategies and opportunities for their respective companies.

11. As a result it was agreed that HBG and Magnet would become partners in the healthcare industry focusing on healthcare strategy, communications and branding and marketing for the purpose of carrying on their business for a profit.

12. HBG is in the business of strategic consulting specializing in healthcare strategy, marketing, communications and branding for its health care clients. HBG is a unique and leading business in its industry. Magnet is in the top twenty-five largest public relations companies in the country. Thus, the parties agreed that a partnership would be mutually beneficial.

13. On or about December 21, 2002, in furtherance of the parties' agreement, both Magnet and HBG entered into a Partnership Agreement. Exhibit 1.

14. As part of the Partnership Agreement, HBG and Magnet agreed that HBG would relocate its business to Magnet's current offices at 20 West Kinzie, Magnet's original Chicago location.

15. For the benefit of the partnership HBG relocated its business to the Magnet location at 20 West Kinzie. It was understood by HBG that Magnet had a long term lease and HBG was assured that its relocation was a good business decision.

16. Thus, shortly after January 1, 2003, HBG moved its entire business, its employees and some but not all of its equipment and furnishings to the Magnet location.

17. Prior to the move, HBG had a successful and thriving business and continued to grow its business at a remarkable pace.

18. At great cost and expense to HBG, HBG integrated its business into the Magnet business and also invested substantial amounts in capital improvements into the Magnet location.

19. For the calendar year 2003, as a result of the partnership arrangement between HBG and Magnet, both HBG and Magnet experienced huge growths in revenues.

20. As part of the Partnership Agreement, Magnet and HBG exchanged information and shared office equipment.

21. As part of the agreement, Magnet and HBG shared certain staff and vendors in the performance of a variety of projects for respective clients.

22. In furtherance of the Partnership Agreement, both HBG and Magnet shared revenues.

23. During the course of their relationship, Magnet was so pleased with HBG's presence and abilities that Magnet began holding HBG out to its clients as an extension of Magnet.

24. In turn, HBG began to do the same thing.

25. HBG incorporated the Magnet name into its firm communications and in fact Magnet issued a business card to the principals of HBG. HBG was co-branding Magnet into all of HBG's literature.

26. As time went on HBG practically became Magnet insofar as the outside public was concerned.

27. As evidence, the business card issued to Mr. Jeffrey Nemetz, a principal of HBG fails to at all mention HBG's name.

28. By the end of calendar year 2003, it was clear that the relationship between HBG and Magnet had been a tremendous success. By all accounts Magnet and HBG were both benefiting from the partnership arrangement.

29. A review of the arrangement by year end 2003 revealed that the relationship should continue to grow and blossom. Magnet made no changes to the partnership at year end 2003.

30. In calendar 2003, HBG fulfilled and exceeded the partnership expectation by bringing in several hundred thousand dollars in business that directly benefited Magnet in furtherance of the Partnership Agreement.

31. Magnet continued to grow its new healthcare business into a thriving industry in the healthcare practice as a direct and proximate result of HBG's partnership.

32. By year end 2003 the relationship was such that HBG began to advertise itself as an arm of Magnet.

33. For all practical purposes, the HBG identity had been absorbed into the Magnet structure.

34. This absorption was clear when on or about December 19, 2003, Magnet moved HBG into its new corporate headquarters at 36 East Grand, Chicago, Illinois. Magnet paid all of HBG's moving expenses to the 36 East Grand location.

35. During the course of the relationship, and prior to December 31, 2003, HBG had no substantive communications with the personnel of Magnet in New York.

36. For all practical purposes, HBG's communication was exclusively with the Magnet personnel in Chicago.

37. In fact, at the end of 2003, it was agreed that HBG and Magnet would continue with its relationship into the next year with no limitation thereafter.

38. For some unknown and not readily apparent reason, in late March, 2004, Magnet decided to terminate the Partnership Agreement.

39. The termination did not occur from the Chicago office but apparently occurred by Magnet personnel in New York. The termination came as a complete surprise to HBG and the relationship was terminated in an abrupt fashion.

40. In addition, in or about April, 2004, Magnet demanded that HBG vacate the Magnet premises immediately.

41. Magnet in its demand indicated that HBG under no circumstances remain on the Magnet premises beyond May 31, 2004. As such, HBG began furiously looking for new office space, furniture, phone systems, computer systems and the like.

42. As a result of the abrupt termination of the Partnership Agreement and demand to vacate, the disruption of the business of HBG was severe.

43. Prior to the commencement of the partnership between HBG at the request of Magnet, moved into the Magnet location. For all practical purposes HBG operated what Magnet hoped to be its national healthcare practice in the country right here in Chicago.

44. As a result of the Partnership Agreement, HBG lost much of its own brand name and identity.

45. To HBG customers, HBG was really known now as an arm of Magnet.

46. Having marketed under the Magnet name for specific clients for some time, HBG has lost out on significant opportunities in terms of business profit and business development.

47. It is clear that as a result of the wrongful termination of the Partnership Agreement, HBG will suffer business losses in excess of $1,000,000.00.

48. In addition, when Magnet terminated the Partnership Agreement and made the demand that HBG immediately vacate the Magnet premises, Magnet agreed to pay HBG its reasonable costs associated with the move and relocation of the HBG business. Exhibit 2.

49. While such moving costs have been incurred by HBG, having moved on or about May 22, 2004, Magnet has failed to pay the same.

50. The moving and relocation costs will exceed $100,000.00.

## COUNT I – BREACH OF PARTNERSHIP AGREEMENT

1 - 50. Plaintiff reallages in reincorporates paragraphs 1 through 50 as paragraphs 1 through 50 of this Count I.

51. On or about December 2, 2002, HBG and Magnet entered into a Partnership Agreement wherein Magnet and HBG agreed to become partners in performing strategic planning communication, marketing and branding services for various healthcare companies.

52. As such, the parties executed a written Partnership Agreement setting forth some but not all of the terms of the agreement. Exhibit 1.

53. In or about March, 2004, Magnet abruptly and wrongfully terminated the Partnership Agreement without cause and therefore breached the agreement. As a direct and proximate result of that breach of agreement, HBG has lost significant business profits as well as significant future revenues.

54. As a direct and proximate result of Magnet's wrongful termination of the Partnership Agreement, HBG has been damaged in excess of $1,000,000.00 in the form of business profits and future business profits.

WHEREFORE, the Plaintiff, HEALTHCARE BRANDING GROUP, INC., prays this Honorable Court enter a judgment in its favor and against MAGNET COMMUNICATIONS, LLC, in a sum exceeding $1,000,000.00 plus costs and interest thereon.

8

## COUNT II – BREACH OF CONTRACT

1 - 50. Plaintiff realleges and reincorporates paragraphs 1 through 50 as paragraphs 1 through 50 of this Count II.

55. On or about April 29, 2004, Magnet agreed to pay all reasonable costs associated with HBG's moving and relocating its premises as a result of the demand upon HBG by Magnet that HBG relocate its business.

56. As a result of Magnet's demand to vacate the Magnet premises, HBG agreed to move and did so on May 22, 2004.

57. While HBG has incurred moving and relocation expenses in excess of $100,000.00, Magnet has failed to pay the aforesaid sum even though it agreed to.

58. Magnet is therefore in breach of the agreement.

59. As a direct and proximate result of Magnet's failure to pay the aforesaid sum, HBG has been damaged in a sum exceeding $100,000.00.

WHEREFORE, the Plaintiff, HEALTHCARE BRANDING GROUP, INC., prays this Honorable Court enter a judgment in its favor and against MAGNET COMMUNICATIONS, LLC, in a sum exceeding $50,000.00 plus costs and interest thereon.

## COUNT III – BREACH OF LEASE
## (IN THE ALTERNATIVE ONLY)

1 - 50. Plaintiff realleges and reincorporates paragraphs 1 through 50 as paragraphs 1 through 50 of this Count III.

60. On or about December 21, 2002, Magnet leased premises to HBG on an annual basis from year to year commencing on January 1, 2003, to December 31, 2003.

61. In December, 2003, Magnet relocated HBG to new premises for another term of one year commencing on January 1, 2004.

62. Without cause or justification Magnet, in April, 2004, terminated the lease agreement and demanded that HBG vacate the premises within 30 days.

63. HBG, with no other choice reluctantly at great cost and expense vacated the premises.

64. Magnet's wrongful termination of the lease agreement is a breach of the lease agreement.

65. As a direct and proximate result of the breach of agreement, HBG has been damaged in a sum exceeding $1,000,000.00.

WHEREFORE, the Plaintiff, HEALTHCARE BRANDING GROUP, INC., prays this Honorable Court enter a judgment in its favor and against MAGNET COMMUNICATIONS, LLC, in a sum exceeding $1,000,000.00 plus costs and interest thereon.

## COUNT IV – BREACH OF FIDUCIARY DUTY

1 - 50. Plaintiff realleges and reincorporates paragraphs 1 through 50 as paragraphs 1 through 50 of this Count IV.

66. As a result of the formation of a partnership between HBG and Magnet, a fiduciary relationship existed between the parties.

67. As a result of the fiduciary relationship between HBG and Magnet, the parties owed each other a fiduciary duty.

68. Magnet breached the fiduciary duty owed to HBG as follows:

a) Wrongfully breached the Partnership Agreement;

b) Persuaded HBG to provide know how, expertise, confidential information to Magnet who used all said information to its benefit and then later wrongfully terminated the Partnership Agreement; and

c) Continues to usurp business opportunities derived from the partnership for its own benefit and to the detriment of HBG.

WHEREFORE, the Plaintiff, HEALTHCARE BRANDING GROUP, INC., prays this Honorable Court enter a judgment in its favor and against MAGNET COMMUNICATIONS, LLC, in a sum exceeding $1,000,000.00 plus costs and interest thereon.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

HEALTHCARE BRANDING GROUP, INC.

By:_____
One of Its Attorneys

Elliot S. Wiczer
Kristen M. Lehner
Wiczer & ZELMAR, LLC
500 Skokie Blvd. Suite 350
Northbrook, IL 60062
(847) 849-4800
ARDC No. 06208432

11



**HEALTHCARE BRANDING GROUP, INC.**
*INVENTING AND REVITALIZING BRANDS*

## Magnet/HBG '2003 Working Partnership

Both parties have reviewed and mutually agreed to the working agreement set forth below. This agreement is for calendar year 2003. At the end of 2003, both parties agree to evaluate the outcome of this alliance in a thoughtful manner, spending the necessary time and energy to shape any/all future agreements.

1. For calendar year 2003, Magnet will provide three private offices and four workstations (to be located in the new space as a result of the enhancements to the storage room/mailing center/kitchen).

Included in our relocation to your offices, Magnet will provide phones, T1 access, build-out expenses, office furnishings, and limited storage space for supplies, etc. HBG will have 24-hour access to the space, appropriate lobby, elevator, and door/reception signage. Further, Magnet agrees to provide access to two in building parking spaces (HBG to pay the monthly rate).

HBG will offset any initial technology expenses involved in the integration as it relates to optimizing their workflow within the Magnet space. Should there be expenses in this integration that benefits Magnet's office needs; those expenses will be born by Magnet.

HBG agrees that the value of the space and amenities is equal to $50,000 for 2003.

HBG kindly requests that the space be ready for their occupancy by the end of this year.

2. In calendar year 2003, in exchange for "free rent", HBG will make best efforts to generate no less than $100,000 in new public relations revenue for Magnet.

This business will be generated from HBG current or prospective clients. The revenue target may also be offset by accessing HBG consultants for strategy and creative services. We will provide a list of professional services and their associated fees representing a discount in our hourly rate structure. We also agree that a project fee may be negotiated from time to time in support of our contributions.

HBG and Magnet will review each client engagement and determine whether the work will be set off against the targeted goal or if HBG will be paid direct dollar compensation for their level of contributions, i.e. ECMC.

HBG will provide quarterly reports to Magnet reflecting service time for associated efforts relative to the $100,000 offset.

3. HBG will receive no commissions on the first $250,000 dollars of business generated to Magnet. After reaching that financial target, HBG will receive a 10% commission on business they generate in Magnet's behalf through calendar year 2003.


EXHIBIT 1

BANK ONE PLAZA
513 CENTRAL AVENUE
SUITE 300
HIGHLAND PARK, IL 60035

T 847-681-6150
F 847-681-6170

4. Magnet will receive a 10% commission on all business referred and contracted for by HBG through 2003.

5. Magnet and HBG will share the cost of a receptionist and a senior account executive. Both Harriet and Jennifer to approve the hiring and evaluation of said employees. This will be the case for all other shared employees.

6. Both parties agree that wherever possible Magnet will make best efforts to provide access to their vast network of resources and relationships that may benefit the growth of HBG.

7. It is the intention of HBG to operate in many respects as a sister company to Magnet and its umbrella network, and that there may be an opportunity to be acquired in the future should HBG demonstrate its value to this enterprise.

_____  Date: 12-2-02
Harriet Karzen, Principal
Healthcare Branding Group, Inc.

_____  Date: 12-5-02
Jennifer Hauser Pfahler, Director – Chicago Office
Magnet Communications

e: Our Partnership Agreement

Copyright © 2004 Healthcare Branding Group, Inc.(HBG) All rights reserved. All information contained in this e-mail (including any attachments hereto) is confidential and proprietary to HBG. By reading this e-mail, you are agreeing that you will not copy, disclose or use this e-mail or any of the ideas, concepts or information contained herein without HBG's prior written permission.

A member of the magnet communications network, a EURO RSCG Tatham Partners Company

From: patrick.resk@eurorscg.com
Date: Thu, 29 Apr 2004 18:07:11 -0400
To: "Jeffrey A. Nemetz" <jnemetz@hbginc.biz>
Cc: "Elliot S. Wiczer" <EWiczer@wiczerzelmar.com>, Larry Elisco <larry@elisco-oconnell.com>
Subject: Re: Our Partnership Agreement

Jeff,

I am very disappointed to have received this letter from you, particularly as you insist I work with your attorneys going forward. For what reason is that? The letter you signed with Jennifer last year outlining a working relationship is informal at best.

I assured you I would make a reasonable contribution to help your move. I stand by that offer. However, I get the feeling you are mixing apples and oranges together. I expect payment in full for the monies you have received from our joint client which pertains to Magnet's services provided. The bulk of these funds are for third party vendors who are desperate for payment. I have e-mails from you assuring you would pay Magnet immediately upon receipt.

Please specifically let me know your intentions and timing of paying these monies before we have attorneys get involved with the relocation issues.

Thanks,
Patrick

Patrick Resk
Executive Vice President
Chief Financial Officer
Euro RSCG Magnet
110 Fifth Avenue
NY, NY 10011
212.367.6809 (phone)
212.367.8133 (fax)
mailto:patrick.resk@eurorscg.com

"Jeffrey A. Nemetz" <jnemetz@hbginc.biz> 04/28/2004 05:53 PM

To

<patrick.resk@eurorscg.com>

EXHIBIT
a