# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MAGNET COMMUNICATIONS, LLC, a )
New York limited liability company, )
                                      )
              Plaintiff, )
                                        )
     vs. )
                                          )
HEALTHCARE BRANDING GROUP, INC., )
an Illinois corporation, )
                                       )
            Defendant. )
                                         )
                                         )

Case No. 04 C 4630

Judge Amy St. Eve

Magistrate Judge Mason

FILED

NOV 3 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
NOV 0 4 2004

## MAGNET COMMUNICATIONS' ANSWER
## TO HEALTHCARE BRANDING GROUP'S COUNTERCLAIM

        Plaintiff/Counter-Defendant Magnet Communications, LLC ("Magnet") answers

Defendant/Counter-Plaintiff Healthcare Branding Group, Inc.'s ("HBG") Counterclaim as

follows:

**Paragraph 1:**

        HBG is an Illinois corporation with its principal place of business in Chicago,
Illinois

**Answer:**

        Magnet admits the allegations contained in paragraph 1.

**Paragraph 2:**

        Prior to December 31, 2002, HBG operated its business independent of any other
business or entity.

**Answer:**

Magnet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2.

**Paragraph 3:**

HBG is a national company providing "brand [sic] development and full service communications services to companies in the healthcare sector. The principals of HBG have over 20 years of experience in health care communications.

**Answer:**

Magnet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3.

**Paragraph 4:**

HBG and its principals have a far reaching network in the healthcare sector. Some of their representative clients have been Blue Cross Blue Shield of Illinois, Abbot, Baxter Healthcare International, Hospital Sisters Health Systems and Premier and other similar healthcare organizations.

**Answer:**

Magnet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4.

**Paragraph 5:**

Magnet Communications, LLC ("Magnet") is in the business of public relations and media relations.

**Answer:**

Magnet admits the allegations contained in paragraph 5.

**Paragraph 6:**

Magnet was not specializing in health care branding, marketing and/or communications before the partnership with HBG. With HBG's experience the vision of the two

2

companies was that HBG could enable Magnet's Chicago office to expand into the healthcare industry performing a full service continuum of communication services.

**Answer:**

Magnet denies the allegations contained in paragraph 6, except that Magnet admits that, while it had a health care public relations practice prior to its involvement with HBG, it did not have a health care branding practice and the agreement between Magnet and HBG allowed both companies to provide a full spectrum of services to their health care clients.

**Paragraph 7:**

Magnet, upon information and belief, maintains its principal place of business in New York, New York. Magnet is doing business in Chicago, Cook County, Illinois, with offices located at 36 East Grand.

**Answer:**

Magnet admits the allegations contained in paragraph 7.

**Paragraph 8:**

Venue is proper in this district under 28 U.S.C. Sections 1391(b) and (c) in that all of the facts and occurrences giving rise to this cause of action arose in the Northern District of Illinois.

**Answer:**

Magnet admits the allegations contained in paragraph 8.

**Paragraph 9:**

This Court has jurisdiction of this Counterclaim based on 28 U.S.C. Section 1332, "Diversity", in that this is a civil action between citizens of different states and the controversy exceeds $75,000.00. Also, this Court also has jurisdiction based on 28 U.S.C. Section 1367, "Supplemental Jurisdiction".

**Answer:**

Magnet admits the allegations contained in paragraph 9.

3

**Paragraph 10:**

Some time prior to December, 2002, HBG and Magnet began discussing potential business strategies and opportunities for their respective companies.

**Answer:**

Magnet admits the allegations contained in paragraph 10.

**Paragraph 11:**

As a result it was agreed that HBG and Magnet would become partners in the healthcare industry focusing on healthcare strategy, communications and branding and marketing for the purpose of carrying on their business for a profit.

**Answer:**

Magnet admits that Magnet and HBG entered into an agreement entitled "Magnet/HBG 2003 Working Partnership." Magnet denies the remaining allegations contained in paragraph 11.

**Paragraph 12:**

HBG is in the business of strategic consulting specializing in healthcare strategy, marketing, communications and branding for its health care clients. HBG is a unique and leading business in its industry. Magnet is in the top twenty-five largest public relations companies in the country. Thus, the parties agreed that a partnership would be mutually beneficial.

**Answer:**

Magnet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first two sentences of paragraph 12. Magnet admits the third sentence of paragraph 12. Magnet also admits that Magnet and HBG entered into an agreement entitled "Magnet/HBG 2003 Working Partnership." Magnet denies any remaining allegations contained in paragraph 12.

4

**Paragraph 13:**

On or about December 21, 2002, in furtherance of the parties' agreement, both Magnet and HBG entered into a Partnership Agreement. Exhibit 1.

**Answer:**

Magnet admits that Magnet and HBG entered into an agreement entitled "Magnet/HBG 2003 Working Partnership" and that a copy of that document is attached to the counterclaim as Exhibit 1. Magnet denies any remaining allegations contained in paragraph 13.

**Paragraph 14:**

As part of the Partnership Agreement, HBG and Magnet agreed that HBG would relocate its business to Magnet's current offices at 20 West Kinzie, Magnet's original Chicago location.

**Answer:**

Magnet admits that it agreed to provide three private offices and four workstations at its offices at 20 West Kinzie, Chicago, Illinois offices, and that HBG used not only the agreed-upon offices and workstations, but additional space and resources from Magnet as well. Magnet denies any remaining obligations in paragraph 14.

**Paragraph 15:**

For the benefit of the partnership HBG relocated its business to the Magnet location at 20 West Kinzie. It was understood by HBG that Magnet had a long term lease and HBG was assured that its relocation was a good business decision.

**Answer:**

Magnet denies the allegations contained in paragraph 15, except that Magnet admits that HBG relocate its business to Magnet's location at 20 West Kinzie.

**Paragraph 16:**

Thus, shortly after January 1, 2003, HBG moved its entire business, its employees and some but not all of its equipment and furnishings to the Magnet location.

5

**Answer:**

Magnet admits that HBG moved into Magnet's office space after January 1, 2003.

Magnet lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 16.

**Paragraph 17:**

Prior to the move, HBG had a successful and thriving business and continued to grow its business as a remarkable pace.

**Answer:**

Magnet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17.

**Paragraph 18:**

At great cost and expense to HBG, HBG integrated its business into the Magnet business and also invested substantial amounts in capital improvements into the Magnet location.

**Answer:**

Magnet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18.

**Paragraph 19:**

For the calendar year 2003, as a result of the partnership arrangement between HBG and Magnet, both HBG and Magnet experienced huge growths in revenues.

**Answer:**

Magnet admits that HBG experienced "huge growth" in revenues during calendar year 2003 as a result of its agreement with Magnet. Magnet denies the remaining allegations contained in paragraph 19.

011.1224964.3

**Paragraph 20:**

As part of the Partnership Agreement, Magnet and HBG exchanged information and shared office equipment.

**Answer:**

Magnet admits that HBG used Magnet's office equipment (and that Magnet and HBG shared one copier) and that HBG and Magnet exchanged information during 2003, but denies any remaining allegations contained in paragraph 20.

**Paragraph 21:**

As part of the agreement, Magnet and HBG shared certain staff and vendors in the performance of a variety of projects for respective clients.

**Answer:**

Magnet denies the allegations contained in paragraph 21, except that Magnet admits that, from time to time, it had design staffers from HBG work on matters for Magnet's clients and paid HBG for the work done by those design staffers.

**Paragraph 22:**

In furtherance of the Partnership Agreement, both HBG and Magnet shared revenues.

**Answer:**

Magnet denies the allegations contained in paragraph 22.

**Paragraph 23:**

During the course of their relationship, Magnet was so pleased with HBG's presence and abilities that Magnet began holding HBG out to its clients as an extension of Magnet.

**Answer:**

Magnet denies the allegations contained in paragraph 23.

011.1224964.3

**Paragraph 24:**

In turn, HBG began to do the same thing.

**Answer:**

Magnet denies the allegations contained in paragraph 24, except that Magnet admits that HBG held itself out as Magnet.

**Paragraph 25:**

HBG incorporated the Magnet name into its firm communications and in fact Magnet issued a business card to the principals of HBG. HBG was co-branding Magnet into all of HBG's literature.

**Answer:**

Magnet denies the allegations contained in paragraph 25, except that Magnet admits that Magnet issued business cards to HBG (but believes that those cards were never used by HBG) and that HBG held itself out as Magnet.

**Paragraph 26:**

As time went on HBG practically became Magnet insofar as the outside public was concerned.

**Answer:**

Magnet denies the allegations contained in paragraph 26.

**Paragraph 27:**

As evidence, the business card issued to Mr. Jeffrey Nemetz, a principal of HBG fails to at all mention HBG's name.

**Answer:**

Magnet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27.

011.1224964.3

**Paragraph 28:**

By the end of calendar year 2003, it was clear that the relationship between HBG and Magnet had been a tremendous success. By all accounts Magnet and HBG were both benefiting from the partnership arrangement.

**Answer:**

Magnet admits that the relationship between HBG and Magnet was a "tremendous success" for HBG, but not for Magnet, and that HBG benefited from that relationship. Magnet denies the remaining allegations contained in paragraph 28.

**Paragraph 29:**

A review of the arrangement by year end 2003 revealed that the relationship should continue to grow and blossom. Magnet made no changes to the partnership at year end 2003.

**Answer:**

Magnet denies the allegations contained in paragraph 29.

**Paragraph 30:**

In calendar 2003, HBG fulfilled and executed the partnership expectation by bringing in several hundred thousand dollars in business that directly benefited Magnet in furtherance of the Partnership Agreement.

**Answer:**

Magnet denies the allegations contained in paragraph 30.

**Paragraph 31:**

Magnet continued to grow its new healthcare business into a thriving industry in the healthcare practice as a direct and proximate result of HBG's partnership.

**Answer:**

Magnet denies the allegations contained in paragraph 31.

**Paragraph 32:**

By year end 2003 the relationship was such that HBG began to advertise itself as an arm of Magnet.

**Answer:**

Magnet admits that HBG held itself out as Magnet. Magnet denies the remaining allegations contained in paragraph 32.

**Paragraph 33:**

For all practical purposes, the HBG identity had been absorbed into the Magnet structure.

**Answer:**

Magnet denies the allegations contained in paragraph 33.

**Paragraph 34:**

This absorption was clear when on or about December 19, 2003, Magnet moved HBG into its new corporate headquarters at 36 East Grand, Chicago, Illinois. Magnet paid all of HBG's moving expenses to the 36 East Grand location.

**Answer:**

Magnet admits that HBG moved to Magnet's new offices at 36 East Grand, Chicago, Illinois on or about December 19, 2003 and that Magnet paid all of HBG's moving expenses. Magnet denies the remaining allegations contained in paragraph 34.

**Paragraph 35:**

During the course of the relationship, and prior to December 31, 2003, HBG had no substantive communications with the personnel of Magnet in New York.

**Answer:**

Magnet admits the allegations contained in paragraph 35.

**Paragraph 36:**

For all practical purposes, HBG's communication was exclusively with the Magnet personnel in Chicago.

**Answer:**

Magnet admits the allegations contained in paragraph 36.

**Paragraph 37:**

In fact, at the end of 2003, it was agreed that HBG and Magnet would continue with its relationship into the next year with no limitation thereafter.

**Answer:**

Magnet denies the allegations contained in paragraph 37.

**Paragraph 38:**

For some unknown and not readily apparent reason, in late March, 2004, Magnet decided to terminate the Partnership Agreement.

**Answer:**

Magnet admits that in or around March, 2004, Magnet informed HBG that the business relationship with HBG would be terminated. Magnet denies the remaining allegations contained in paragraph 38.

**Paragraph 39:**

The termination did not occur from the Chicago office but apparently occurred by Magnet personnel in New York. The termination came as a complete surprise to HBG and the relationship was terminated in an abrupt fashion.

**Answer:**

Magnet admits that in or around March, 2004, Magnet informed HBG that the business relationship with HBG would be terminated. Magnet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 39. Magnet denies the remaining allegations contained in paragraph 39.

11

**Paragraph 40:**

In addition, in or about April, 2004, Magnet demanded that HBG vacate the Magnet premises immediately.

**Answer:**

Magnet admits the allegations contained in paragraph 40.

**Paragraph 41:**

Magnet in its demand indicated that HBG under no circumstances remain on the Magnet premises beyond May 31, 2004. As such, HBG began furiously looking for new office space, furniture, phone systems, computer systems and the like.

**Answer:**

Magnet admits the allegations contained in the first sentence of paragraph 41.

Magnet lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in the second sentence of paragraph 41.

**Paragraph 42:**

As a result of the abrupt termination of the Partnership Agreement and demand to vacate, the disruption of the business of HBG was severe.

**Answer:**

Magnet denies the allegations contained in paragraph 42.

**Paragraph 43:**

Prior to the commencement of the partnership between HBG at the request of Magnet, moved into the Magnet location. For all practical purposes HBG operated what Magnet hoped to be its national healthcare practice in the country right here in Chicago.

**Answer:**

Magnet denies the allegations contained in paragraph 43.

12

**Paragraph 44:**

As a result of the Partnership Agreement, HBG lost much of its own brand name and identity.

**Answer:**

Magnet denies the allegations contained in paragraph 44.

**Paragraph 45:**

To HBG customers, HBG was really known now as an arm of Magnet.

**Answer:**

Magnet denies the allegations contained in paragraph 45.

**Paragraph 46:**

Having marketed under the Magnet name for specific clients for some time, HBG has lost out on significant opportunities in terms of business profit and business development.

**Answer:**

Magnet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46.

**Paragraph 47:**

It is clear that as a result of the wrongful termination of the Partnership Agreement, HBG will suffer business losses in excess of $1,000,000.00.

**Answer:**

Magnet denies the allegations contained in paragraph 47.

**Paragraph 48:**

In addition, when Magnet terminated the Partnership Agreement and made the demand that HBG immediately vacate the Magnet premises, Magnet agreed to pay HBG its reasonable costs associated with the move and relocation of the HBG business. Exhibit 2.

011.1224964.3

**Answer:**

Magnet admits that its Chief Financial Officer told HBG that Magnet would make a reasonable, limited contribution to help with HBG's move provided that HBG paid Magnet amounts owed by HBG to Magnet. Magnet denies any remaining allegations contained in paragraph 48.

**Paragraph 49:**

While such moving costs have been incurred by HBG, having moved on or about May 22, 2004, Magnet has failed to pay the same.

**Answer:**

Magnet admits that it has not paid HBG's moving expenses. Magnet denies any remaining allegations contained in paragraph 49.

**Paragraph 50:**

The moving and relocation costs will exceed $100,000.00.

**Answer:**

Magnet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50.

## Count I

**Paragraph 1 - 50:**

Plaintiff realleges and reincorporates paragraphs 1 through 50 as paragraphs 1 through 50 of this Count I.

**Answer:**

Magnet incorporates its answers to paragraphs 1 through 50 as its answer to paragraphs 1 through 50 of this Count I.

14

**Paragraph 51:**

On or about December 2, 2002, HBG and Magnet entered into a Partnership Agreement wherein Magnet and HBG agreed to become partners in performing strategic planning communication, marketing and branding services for various healthcare companies.

**Answer:**

Magnet admits that Magnet and HBG entered into an agreement entitled "Magnet/HBG 2003 Working Partnership." Magnet denies the remaining allegations contained in paragraph 51.

**Paragraph 52:**

As such, the parties executed a written Partnership Agreement setting forth some but not all of the terms of the agreement. Exhibit 1.

**Answer:**

Magnet admits that Magnet and HBG entered into an agreement entitled "Magnet/HBG 2003 Working Partnership" and that a copy of that document is attached as Exhibit 1. Magnet denies any remaining allegations contained in paragraph 52.

**Paragraph 53:**

In or about March, 2004, Magnet abruptly and wrongfully terminated the Partnership Agreement without cause and therefore breached the agreement. As a direct and proximate result of that breach of agreement, HBG has lost significant business profits as well as significant future revenues.

**Answer:**

Magnet denies the allegations contained in paragraph 53.

**Paragraph 54:**

As a direct and proximate result of Magnet's wrongful termination of the Partnership Agreement, HBG has been damaged in excess of $1,000,000.00 in the form of business profits and future business profits.

**Answer:**

Magnet denies the allegations contained in paragraph 54.

## Count II

**Paragraph 1 - 50:**

Plaintiff realleges and reincorporates paragraphs 1 through 50 as paragraphs 1 through 50 of this Count II.

**Answer:**

Magnet incorporates its answers to paragraphs 1 through 50 as its answer to paragraphs 1 through 50 of this Count II.

**Paragraph 55:**

On or about April 29, 2004, Magnet agreed to pay all reasonable costs associated with HBG's moving and relocating its premises as a result of the demand upon HBG by Magnet that HBG relocate its business.

**Answer:**

Magnet admits that its Chief Financial Officer told HBG that Magnet would make a reasonable, limited contribution to help with HBG's move provided that HBG paid Magnet amounts owed by HBG to Magnet. Magnet denies any remaining allegations contained in paragraph 54.

**Paragraph 56:**

As a result of Magnet's demand to vacate the Magnet premises, HBG agreed to move and did so on May 22, 2004.

**Answer:**

Magnet admits that HBG vacated Magnet's premises. Magnet denies the remaining allegations contained in paragraph 56.

16

**Paragraph 57:**

While HBG has incurred moving and relocation expenses in excess of $100,000.00, Magnet has failed to pay the aforesaid sum even though it agreed to.

**Answer:**

Magnet denies the allegations contained in paragraph 57, except that Magnet admits that it has not paid any costs of relocation.

**Paragraph 58:**

Magnet is therefore in breach of the agreement.

**Answer:**

Magnet denies the allegations contained in paragraph 58.

**Paragraph 59:**

As a direct and proximate result of Magnet's failure to pay the aforesaid sum, HBG has been damaged in a sum exceeding $100,000.00.

**Answer:**

Magnet denies the allegations contained in paragraph 59.

## Count III

**Paragraph 1 - 50:**

Plaintiff realleges and reincorporates paragraphs 1 through 50 as paragraphs 1 through 50 of this Count III.

**Answer:**

Magnet incorporates its answers to paragraphs 1 through 50 as its answer to paragraphs 1 through 50 of this Count III.

**Paragraph 60:**

On or about December 21, 2002, Magnet leased premises to HBG on an annual basis from year to year commencing on January 1, 2003, to December 31, 2003.

17

**Answer:**

Magnet denies the allegations contained in paragraph 60.

**Paragraph 61:**

In December, 2003, Magnet relocated HBG to new premises for another term of one year commencing on January 1, 2004.

**Answer:**

Magnet denies the allegations contained in paragraph 61.

**Paragraph 62:**

Without cause or justification Magnet, in April, 2004, terminated the lease agreement and demanded that HBG vacate the premises within 30 days.

**Answer:**

Magnet denies the allegations contained in paragraph 62, except that Magnet admits that it demanded that HBG vacate the premises.

**Paragraph 63:**

HBG, with no other choice reluctantly at great cost and expense vacated the premises.

**Answer:**

Magnet lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 63.

**Paragraph 64:**

Magnet's wrongful termination of the lease agreement is a breach of the lease agreement.

**Answer:**

Magnet denies the allegations contained in paragraph 64.

18

**Paragraph 65:**

As a direct and proximate result of the breach of agreement, HBG has been damaged in a sum exceeding $1,000,000.00.

**Answer:**

Magnet denies the allegations contained in paragraph 65.

## Count IV

**Paragraph 1 - 50:**

Plaintiff realleges and reincorporates paragraphs 1 through 50 as paragraphs 1 through 50 of this Count IV.

**Answer:**

Magnet incorporates its answers to paragraphs 1 through 50 as its answer to paragraphs 1 through 50 of this Count IV.

**Paragraph 66:**

As a result of the formation of a partnership between HBG and Magnet, a fiduciary relationship existed between the parties.

**Answer:**

Magnet denies the allegations contained in paragraph 66.

**Paragraph 67:**

As a result of the fiduciary relationship between HBG and Magnet, the parties owed each other a fiduciary duty.

**Answer:**

Magnet admits that HBG owed Magnet certain fiduciary duties. Magnet denies the remaining allegations contained in paragraph 67.

011.1224964.3

**Paragraph 68:**

Magnet breached the fiduciary duty owed to HBG as follows: (a) wrongfully breached the Partnership Agreement; (b) persuaded HBG to provide know how, expertise, confidential information to Magnet who used all said information to its benefit and then later wrongfully terminated the Partnership Agreement; and (c) continues to usurp business opportunities derived from the partnership for its own benefit and to the detriment of HBG.

**Answer:**

Magnet denies the allegations contained in paragraph 68.

### Affirmative Defenses

1.     The doctrine of unclean hands bars HBG's claims in whole or in part.

2.     HBG's material breach of its contractual obligations to Magnet bars HBG's claims in whole or in part.

3.     The Statute of Frauds bars HBG's claims in whole or in part.

Respectfully submitted,

MAGNET COMMUNICATIONS, LLC

By: _____
            One of Its Attorneys

Bennett L. Epstein
James D. Dasso
Christopher J. Werner
FOLEY & LARDNER LLP
321 North Clark Street
Chicago, Illinois 60610-4764
Telephone: 312.832.4500
Fax: 312.832.4700

Dated: November 3, 2004

011.1224964.3

# CERTIFICATE OF SERVICE

I, James D. Dasso, an attorney, certify that on November 3, 2004, I caused a copy of **MAGNET COMMUNICATIONS' ANSWER TO HEALTHCARE BRANDING GROUP'S COUNTERCLAIM** in the aforesaid action to be delivered by via facsimile and U.S. Mail to the following counsel of record:

| | |
|---|---|
| Elliot Wiczer, Esq.<br>Wiczer & Zelmar, LLC<br>500 Skokie Blvd., Suite 350<br>Northbrook, IL 60062 | Attorney for Healthcare Branding Group, Inc., an Illinois corporation |

James D. Dasso

011.1224964.3